*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0094a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARIBEA BALMERT,

        *Plaintiff-Appellant,*

    *v.*

RELIANCE STANDARD LIFE INSURANCE
COMPANY,

        *Defendant-Appellee.*

No. 08-4433

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 07-00095—James L. Graham, District Judge.

Argued: December 1, 2009

Decided and Filed: April 6, 2010

Before: BATCHELDER, Chief Judge; SILER and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Stanley L. Myers, Powell, Ohio, for Appellant. Joshua Bachrach, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Stanley L. Myers, Powell, Ohio, for Appellant. Joshua Bachrach, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, Philadelphia, Pennsylvania, for Appellee.

_____

## AMENDED OPINION

_____

SILER, Circuit Judge. Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Maribea Balmert appeals the district court's judgment upholding the benefits determination of Reliance Standard Life Insurance Company ("Reliance Standard"). Concluding that Balmert received a full and

fair review of her claim and that Reliance Standard's benefits determination was not arbitrary and capricious, we affirm.

## BACKGROUND

Balmert began her employment with Big Lots, Inc. as an accountant-tax analyst in 2001. Her position required her to sit most of the day and manipulate her hands, fingers, and wrists to use a computer. As a Big Lots employee, Balmert subscribed to an employee benefit plan offering long-term disability insurance under a contract insured and administered by Reliance Standard.

In August 2004, she stopped working because of symptoms she believed were related to her rheumatoid arthritis. Balmert was evaluated by her rheumatologist, Kevin V. Hackshaw, M.D., on August 26, 2004, but the results of the examination were inconclusive. According to Dr. Hackshaw, Balmert described symptoms of pain in her hands, but "the pain that she complains of is disproportionate relative to the amount of synovitis that I see."[1] Noting that Balmert's symptoms suggested "some other etiology"–with stress as a possibility–Dr. Hackshaw referred her to a neurologist and a psychologist and placed her on temporary medical leave in order to obtain evaluations and recommendations from his colleagues.

On August 30, 2004, Balmert had her first consultation with her psychologist, Wanda McEntyre, Ph.D. Balmert told Dr. McEntyre that she had experienced pain from rheumatoid arthritis for a number of years, but her pain level had recently intensified. Dr. McEntyre noted that Balmert "expresses a strong desire to return to her job, but acknowledges that she does not perceive herself as capable of managing the hours, the pressure, and stress at this time." Balmert began meeting with Dr. McEntyre approximately once every two weeks until she discontinued counseling in December 2004. These counseling sessions generally focused on stress management techniques to prepare Balmert to return to work.

---

[1]Synovitis is the inflamation of the lining of the joints.

After evaluating Balmert on October 21, 2004, Dr. Hackshaw noted that he detected "[n]o active synovitis," that she was "doing well," and that her rheumatoid arthritis "seems to be under good control." Dr. Hackshaw also told Balmert that she could return to work with some limitations, but advised that she may wish to find a less stressful position or explore some type of flex plan that would allow her to take some of her computer typing work home. A few days later, Balmert tearfully expressed her concern to Dr. McEntyre regarding Dr. Hackshaw's determination that she could return to work. At future counseling sessions, Balmert continued to express concerns about her ability to return to work.

Following an evaluation of Balmert on February 10, 2005, Dr. Hackshaw noted that she had "no tender points and no synovitis that I could detect, so I think in general she is doing well." Regarding Balmert's work status, Dr. Hackshaw reported that "we had allowed her to return to work with limitations and they apparently stated that she would not be able to return to work due to the limitations."

After evaluating Balmert on May 19, 2005, Dr. Hackshaw noted that Balmert's rheumatoid arthritis was "somewhat stable," that she had "no synovitis," and that she had "[f]ull range of motion of joints." Dr. Hackshaw noted, after evaluating Balmert on August 18, 2005, that he was generally "pleased with how she is doing." After evaluating Balmert on November 21, 2005, Dr. Hackshaw observed "[m]inimal synovitis" and stated that "she is doing well with current medications."

Balmert filed for long-term disability benefits on February 15, 2005. In a letter dated June 2, 2005, Reliance Standard denied Balmert's claim for long-term disability benefits, stating that "there is no documentation of a physical condition that would preclude you from performing the material duties of your own occupation." Balmert appealed Reliance Standard's denial of her disability benefits. In support of her administrative appeal, Balmert provided Reliance Standard with additional medical and other information pertaining to her claim.

The most important item submitted by Balmert in support of her appeal was a modified Functional Capacity Evaluation ("FCE"), conducted on March 15, 2006. Based on Balmert's modified FCE, Matthew T. Crill, a physical therapist, stated:

> I do not believe it would be safe or prudent to place Ms. Balmert in any type of formal work setting. This conclusion is based on her lack of sitting tolerance, lack of standing tolerance, severe deficits in upper extremity strength, severe deficits in fine motor skills, and chronic and intractable subjective pain rating. She would not be able to perform any of her previous work requirements under modified or full duty in the context of a full work [day]. These recommendations are pending the referring physician's final evaluation.

In a letter dated July 25, 2006, Dr. Hackshaw stated: "I have received a functional capacity evaluation on Ms. Balmert from March 15th 2006 and agree with the findings from this evaluation. I have been following Ms. Balmert since 2004 and would agree her condition was the same at that time as it is now."

After reviewing this material, Reliance Standard arranged for Balmert to be evaluated by an independent medical examiner, Marvin Thomas, M.D. On September 29, 2006, Dr. Thomas reported:

> While the diagnosis of rheumatoid arthritis as mentioned seems firm there is very little evidence of active disease and one would guess that it is in relative remission. Prognosis is always uncertain in this disease but looks reasonably good for her at this point. . . . I would place very little limitation on her in terms of the use of her upper extremities. She might have some difficulty because of her knees with prolonged standing and negotiating steps. In summary while she has a diagnosis of rheumatoid arthritis, it seems controlled. I see no reason why she cannot continue in her present position.

He also noted that "[t]here is no rheumatological basis for disability." On November 2, 2006, he supplemented his report with a statement that "[b]ased on the records that were sent to me it would appear initially that [Balmert] would have difficulty keyboarding and other use of her hands. Based on what I see now this would be much less of a problem."

After reviewing the record, Reliance Standard determined that Balmert would have been precluded from performing her own occupation for a closed period of time

between August 26, 2004 to September 29, 2006. The determination to grant Balmert benefits for a closed period of time was evidently based on Dr. Thomas's opinion that Balmert initially would have had difficulty keyboarding and with other use of her hands. Balmert was informed of the resolution of her administrative appeal by letter dated December 14, 2006. The letter states, in pertinent part:

> Since it has been established that total disability is supported from August 26, 2004 to September 29, 2006, Ms. Balmert's file has been returned to the Claims Department to pay benefits up to the latter date and then close the file on the basis that disability is not supported beyond that date. . . . Please be advised that our claim decision is now final, as Ms. Balmert has exhausted any administrative remedies available.

Balmert filed an ERISA claim against Reliance Standard in district court on February 8, 2007, challenging the limited grant of long-term disability benefits. On September 22, 2008, the district court granted judgment on the administrative record in favor of Reliance Standard. The district court concluded that Reliance Standard's determination of benefits was supported by substantial evidence.

## STANDARD OF REVIEW

We review de novo the district court's ruling, applying the same legal standard as the district court. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). Here, the district court appropriately applied the arbitrary-and-capricious standard of review because the benefit plan granted the ERISA plan administrator discretionary authority to interpret the terms of the plan and to determine eligibility for benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). Under the arbitrary-and-capricious standard, we will uphold a plan administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). However, as we have repeatedly stated, "the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber

stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

## DISCUSSION

### A.  Full and Fair Review

29 U.S.C. § 1133 provides that every employee benefit plan must:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The essential purpose of 29 U.S.C. § 1133 is twofold:  "(1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision reviewed by the fiduciary."  *Wenner v. Sun Life Assurance Co. of Can.*, 482 F.3d 878, 882 (6th Cir. 2007) (emphasis omitted).  Moreover, an administrator may not initially deny benefits for one reason, and then turn around and deny benefits for an entirely different reason, after an administrative appeal, without affording the claimant an opportunity to respond to the second, determinative reason for the denial of benefits.  *Id*. at 882.

Balmert argues that her administrative appeal was procedurally unfair because Reliance Standard's final benefits determination was allegedly for a different reason than its initial benefits determination.  This contention, however, is without merit.  Reliance Standard's June 2, 2005 letter to Balmert stated that the reason for denying long-term disability benefits was that "there is no documentation of a physical condition that would preclude you from performing the material duties of your own occupation."  Similarly, its December 14, 2006 letter to Balmert stated that the basis for denying continuing long-term disability benefits was that "disability is not supported beyond [September 29, 2006]."  In other words, benefits were initially denied based on a lack of evidence of

disability, and continuing benefits were finally denied based on a lack of evidence of disability. This is not a case in which the administrator initially denied benefits for one reason and later denied benefits for another reason. *See id.* The fact that Balmert received benefits for a closed period does not alter the fact that Reliance Standard consistently and accurately notified her that benefits had been denied based on a lack of evidence supporting disability.

Balmert also argues that her administrative appeal was procedurally unfair because she was not given the opportunity to respond to the independent medical examiner's report. Relying on *Houston v. Unum Life Insurance Co. of America*, 246 F. App'x 293 (6th Cir. 2007) (unpublished), Balmert contends that "the persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, *having an opportunity to address the accuracy and reliability of that evidence*, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Id.* at 300 (emphasis in original) (quoting *Halpin v. W. W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992)). Reliance Standard, quoting *Metzger v. Unum Life Insurance Co. of America*, 476 F.3d 1161 (10th Cir. 2007), counters that:

> Permitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal–even when those reports contain no new factual information and deny benefits on the same basis as the initial decision–would set up an unnecessary cycle of submission, review, re-submission, and re-review. This would undoubtedly prolong the appeal process, which, under the regulations, should normally be completed within 45 days. Moreover, such repeating cycles of review within a single appeal would unnecessarily increase cost of appeals.

*Id.* at 1166-67 (internal citations omitted). However, because Balmert did not attempt to rebut Dr. Thomas's medical opinion, it is unnecessary for us to address the limits of a claimant's right to rebut medical opinion reports generated in the course of an administrative appeal.

It is sufficient for us to reiterate that, in the context of an administrative appeal of an adverse benefits determination, 29 C.F.R. § 2560.503-1(h)(2) outlines the essential procedural requirements for a full and fair review.  These procedural requirements include (1) the allowance of 60 days, after notification of an adverse benefit determination, in which a claimant may file an administrative appeal; (2) the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits; (3) the right to be provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits; and (4) the requirement that the fiduciary take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, regardless of whether such information was submitted or considered in the initial benefit determination.  *Id.*

A claimant's failure to fully explore and exercise her procedural rights does not undermine the fundamental fairness of an otherwise full and fair administrative review process.  Even if Balmert had a right to receive a copy of Dr. Thomas's report under 29 C.F.R. § 2560.503-1(h)(2)(iii)–a proposition that is dubious in light of the holdings of two of our sister circuits, *see Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1245-46 (11th Cir. 2008) (holding that a claimant has no right to documents generated during the pendency of an administrative review); *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1165-68 (10th Cir. 2007) (same)–to exercise this purported right, Balmert was required to request a copy of the report.  *See* 29 C.F.R. § 2560.503-1(h)(2)(iii).  It is clear that Balmert had notice that Dr. Thomas would provide a medical evaluation in relation to her administrative appeal as Balmert was personally evaluated by Dr. Thomas during the course of the administrative appeal process.  However, there is no evidence that she requested a copy of Dr. Thomas's report.[2]  Moreover, pursuant to 29 C.F.R. § 2560.503-1(h)(2)(ii), Balmert had the right, during the course of her administrative appeal, to submit written comments, documents, records, and other information for the purpose of rebutting Dr. Thomas's report or otherwise bolstering her

---

[2]Balmert received a copy of Dr. Thomas's report as an appendix to Reliance Standard's December 14, 2006 final determination letter.

claim. *Id*. There is, however, no indication that Balmert tendered any evidence for the purpose of rebutting Dr. Thomas's report. In other words, in spite of the fact that Balmert knew that she had been evaluated by Dr. Thomas and that his report would be considered by Reliance Standard as part of the administrative appeal process, she did not take the opportunity to request a copy of the report or otherwise attempt to address the accuracy and reliability of Dr. Thomas's medical findings. The fact that Balmert did not fully exercise her purported rights to receive and rebut Dr. Thomas's medical opinion does not render her administrative appeal procedurally defective.

## B. Benefits Determination

Balmert argues that Reliance Standard's final decision to grant benefits to Balmert for a closed period, August 26, 2004 to September 29, 2006, but otherwise deny continuing long-term disability benefits, is arbitrary and capricious. We disagree. Balmert's own physician, Dr. Hackshaw, stated on August 26, 2004 that "the pain that she complains of is disproportionate relative to the amount of synovitis that I see." Finding no rheumatological basis for Balmert's alleged symptoms, Dr. Hackshaw requested that she be evaluated by a neurologist and a psychologist. At follow-up appointments, Dr. Hackshaw's evaluations of Balmert were consistently positive. On October 21, 2004, he told Balmert that she could return to work with certain limitations. His records indicate that he believed that Balmert had the capability to work at a computer, albeit on a more limited basis, as he suggested that she explore some type of flex plan that would allow her to take her computer typing work home.

The findings of Dr. Thomas confirm Dr. Hackshaw's initial observations. Dr. Thomas noted that Balmert's rheumatoid arthritis seemed controlled and stated: "I see no reason why she cannot continue in her present position." He also observed "no rheumatological basis for disability." Dr. Thomas indicated that, at the time of his evaluation, Balmert had the capacity to perform keyboarding functions and otherwise use her hands. However, based on his review of Balmert's medical records, he noted that she initially may have had difficulty keyboarding and with other use of her hands. Although there may have been sufficient evidence to support an outright denial of

disability benefits, based on Dr. Thomas's review of the medical records, Reliance Standard granted benefits to Balmert for the closed period of August 26, 2004 to September 29, 2006.

The divergence of medical opinion between Dr. Thomas and Dr. Hackshaw primarily resulted from Balmert's modified FCE. Based on the modified FCE, the physical therapist recommended that it would be unsafe to place Balmert in any type of formal work setting. This recommendation contradicted Dr. Hackshaw's previous medical opinion that Balmert could return to work with some limitations. However, in a highly ambiguous statement, Dr. Hackshaw wrote that he agreed with "the findings from the evaluation" and stated: "I have been following Ms. Balmert since 2004 and would agree her condition was the same at that time as it is now." It is noteworthy that Dr. Hackshaw did not state that he agreed with the recommendations of the physical therapist. Moreover, it is unclear what Dr. Hackshaw meant by his statement that Balmert's condition is "the same" as it was in 2004. Indeed, Balmert remained at work until August 2004; Dr. Hackshaw had consistently opined in 2004 that Balmert's rheumatoid arthritis was under control, and he had told Balmert in October 2004 that she could return to work. Thus, it is reasonable to find that Dr. Thomas's medical observations were more credible than Dr. Hackshaw's ambiguous statement of agreement with the modified FCE.

Under ERISA, plan administrators are not required to accord special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). Moreover, ERISA does not impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. *Id.* Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions. *See id.* at 834. The record indicates that Dr. Hackshaw's medical observations were taken into consideration both by Reliance Standard and by Dr. Thomas. Moreover, there is no indication that Dr. Thomas's medical observations were biased. In fact, Dr. Thomas's medical observations accord with Dr. Hackshaw's initial medical observations, and the apparent change in Dr. Hackshaw's medical opinion is

unexplained. Thus, it is not arbitrary and capricious for Reliance Standard to rely more on Dr. Thomas's medical opinion.

There are also strong indications in the administrative record that Balmert's symptoms were related to stress rather than rheumatoid arthritis. Balmert viewed her position with Big Lots as a "high stress job," and her family members told Dr. Hackshaw that they felt that the stress was exacerbating Balmert's condition. Balmert's conversations with Dr. McEntyre focused on the long hours at work and the demands that were placed upon her at home. Of particular importance, Dr. McEntyre noted that Balmert used complaints of pain to get help from her husband and sons. Thus, there is an evidentiary basis to conclude that Balmert may have overstated her symptoms or that her symptoms may have been real but unrelated to her rheumatoid arthritis. However, because the record was constructed solely to support disability on the basis of rheumatoid arthritis, there is insufficient record evidence to support a finding of disability on another basis.

There is substantial evidence to support Reliance Standard's benefits determination. Therefore, Reliance Standard's benefits determination was not arbitrary and capricious. *See Baker*, 929 F.2d at 1144.

**AFFIRMED**.