File Name: 13a0059n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 12-3190

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Jan 11, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LISA WOODEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ALCOA, INC.; AETNA CORPORATION | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendants-Appellees. | ) | |

Before:      **KEITH, CLAY, and ROGERS, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge**.  This appeal involves the Employment Retirement Income Security Act of  1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq*.  Plaintiff Lisa Wooden was a beneficiary under a disability benefits plan administered by Alcoa, Inc. ("Alcoa") and Aetna Corporation ("Aetna").  Following the termination of her benefits, Wooden brought an ERISA claim in district court.  Defendants counterclaimed for reimbursement of an alleged overpayment of benefits.  Wooden appeals three issues: 1) the district court's denial of her motion to amend her complaint for class action certification, 2) the district court's holding that the termination of her benefits was not arbitrary and capricious, and 3) the district court's grant of summary judgment on Defendants' counterclaim for reimbursement of an alleged overpayment of benefits.  For the following reasons, we **AFFIRM** the district court's judgment.

## FACTUAL BACKGROUND

Alcoa is a producer of aluminum products. Wooden was a production technician for Alcoa, loading parts and repairing machines. She enrolled in Alcoa's employment benefits plan (the "Plan"), which included long-term disability ("LTD") coverage. As plan administrator, Alcoa has the obligation to pay benefits and "has the discretionary authority to determine eligibility under all provisions of the plans." Alcoa also has authority to appoint third-party representatives as claims administrators and did so in this case. Alcoa delegated the initial review and processing of LTD claims to Aetna.[1]

**Terms of the Plan**

The terms of the Plan are memorialized in a policy document and in the Summary Plan Description ("SPD"), an explanation of the policy written in lay terms. The Plan entitled Wooden to LTD benefits if she were to become "totally disabled" as defined by the terms of the Plan. For the first two years of disability, the Plan provides that "totally disabled" means being unable to "perform each of the material duties of [her] regular job" (the "own occupation standard"). R. 38-3, Page ID 1020. After the first two years, "totally disabled" means being unable to "perform each of the material duties of any gainful occupation for which [she is] reasonably suited by training, education, or experience" (the "any occupation standard"). R. 38-3, Page ID 1020.

**Obtaining and Maintaining Benefits Under the Plan**

When claimants apply for LTD benefits, the Plan also requires that they apply for Social Security disability benefits ("SS benefits"). If successfully obtained, LTD benefits are reduced in

---

[1] Alcoa's payments to Aetna are not dependent on whether it grants or denies claims.

proportion to the amount received from Social Security. Moreover, if SS benefits, or "benefits from any other source," are paid retroactively, claimants must repay the Plan "any overpayment of disability benefits." R. 38-3, Page ID 1012. Alcoa reserves the right to require claimants to undergo periodic medical examinations to prove continued disability.

If LTD benefits are denied or terminated, the Plan provides for two levels of appeal. Aetna hears the first appeal. The second and final appeal is heard and decided by an internal Alcoa body called the Benefits Appeals Committee ("BAC"). The BAC consists of five current Alcoa employees. Although participants in the Plan, they do not participate in Plan administration and are uncompensated for their role as committee members.

### The Initial Termination and Reinstatement of Plaintiff's Disability Benefits

Wooden ceased working for Alcoa on August 1, 2003, due to back pain. Her pain limited her ability to use her hands, sit for prolonged periods of time, stoop, bend, reach, and squat. On February 7, 2004, Plaintiff began receiving LTD benefits under the Plan's "own occupation" standard. She began seeing various doctors, including Dr. Gregory Thomas, who mostly treated her with ever-increasing doses of medication. Wooden also applied for SS benefits as the Plan requires. Her SS application was initially denied, and she requested a hearing. In August 2005, Broadspire—the third-party claims administrator at the time—initiated a review of Plaintiff's medical records to determine whether she was still eligible for benefits.[2] Broadspire found she was

---

[2] Alcoa originally used Broadspire in order to review LTD claims. In 2007, Broadspire's business was taken over by Aetna.

not eligible and terminated her benefits on October 24, 2005. Wooden initiated a first-level appeal with Broadspire.

On February 17, 2006, Wooden appeared for her Social Security hearing. The administrative law judge found that she was totally disabled according to the Social Security Administration's (SSA) standard and that she was entitled to SS benefits, retroactive to January 1, 2004. Wooden's appeal with Broadspire was also successful, and her LTD benefits were reinstated in April 2006.

Wooden continued to see Dr. Thomas throughout 2006. In June, he reported that it was "hard . . . to imagine why [Wooden was] so symptomatic." R. 36-4, Page ID 633. By August, Dr. Thomas stated, "Neurologically I don't find her very impressive. . . . All we have is a subjective complaint of pain, pain and more pain." R. 36-4, Page ID 636.

**Plaintiff's Alleged Overpayment**

In September 2006, Broadspire sent Wooden a letter explaining that it had received notice of her SS benefits. The letter stated that the retroactive payments had resulted in an overpayment that needed to be returned to the Plan.

**Final Termination of Plaintiff's Benefits**

In April 2007, Broadspire began a new examination of Wooden's continued eligibility for LTD benefits. It hired Dr. Steven Sokoloski, an orthopedic surgeon, to examine Plaintiff. He diagnosed her with chronic thoracic spine pain, but ultimately concluded that Wooden was capable of sedentary work with restrictions. Dr. Sokoloski also observed: (1) cogwheeling—indicating Wooden did not use her full effort during the examination; and (2) Waddell signs—indicating that at least some of her pain had no identifiable physical cause.

Broadspire conducted an employability assessment and a labor market survey in early 2008. The assessments concluded that Plaintiff had the capacity to work at a number of locally available jobs, each with a wage exceeding her benefit. At this time, Aetna took over the investigation of Wooden's disability claim, and it terminated her LTD benefits on April 30, 2008.

**Plaintiff's Appeal Under the Plan**

Wooden initiated her first-level appeal to Aetna in October 2008. In support of her appeal, Plaintiff consulted Dr. Michael Riethmiller. Dr. Riethmiller concluded that Wooden was totally disabled due to the side effects of her medication which limited her cognitive abilities—specifically, drowsiness and memory impairment.

Aetna gathered all of Wooden's medical records and sent them to three experts for review. Dr. Lawrence Burstein, a psychologist, found no evidence in the record that any measurement was taken of Wooden's cognitive ability. He questioned Dr. Riethmiller's report because it was based solely on Plaintiff's subjective complaints. Dr. Andrew Goldberg, an anesthesiologist, questioned Dr. Reithmiller's conclusion that Wooden's cognitive problems were due to her medication because Wooden had "been on high dose narcotics since 2003 without any prior issues of cognitive impairment." R.37-2, Page ID 738–45. Dr. Vaughn Cohan, a neurologist, was skeptical of Dr. Riethmiller because he relied "to a significant degree on the claimant's report that she has difficulty with memory, attention, and concentration despite the fact that there was no evidence that this was tested by Dr. Riethmiller." R. 37-2, Page ID 751.

Aetna upheld its decision to terminate Wooden's LTD benefits and notified her in March 2009. The letter noted her favorable disability determination from the SSA, stating that the SSA's finding of disability "did not support" the continuance of benefits. R. 37-1, Page ID 764.

Wooden filed her final appeal under the Plan to Alcoa who, through the BAC, ordered an additional review of her medical records. This review also concluded that Dr. Riethmiller's reasoning regarding Wooden's cognitive difficulties was unsupported by the evidence in the record. The BAC denied Wooden's claim in November 2010.

## PROCEDURAL BACKGROUND

Plaintiff brought a civil action appealing the termination of her benefits against Alcoa and Aetna in March 2011. Defendants counterclaimed, seeking reimbursement of an alleged overpayment of benefits. In June 2011, Wooden filed a motion to amend her complaint, seeking class certification for an alleged breach of fiduciary duty by Alcoa. In August 2011, the motion was denied as futile for failure to demonstrate that her action fell into one of the specified class action categories, as is required by Federal Rule of Civil Procedure 23(b). In January 2012, the district court affirmed the termination of Plaintiff's benefits and granted summary judgment to Defendants on the counterclaim.

## ANALYSIS

Wooden appeals the denial of her motion to amend her complaint, the decision upholding the termination of her benefits, and the grant of summary judgment on Defendant's counterclaim. We now address each of Wooden's claims in turn.

**I.      Denial of Wooden's Motion to Amend the Complaint**

Wooden brought a motion to amend her complaint, seeking class action certification.  The district court denied the motion as futile and we affirm.

A denial of a motion to amend a complaint is reviewed *de novo*.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).  Once a responding party has been served, a complainant may amend a complaint only by leave of the court.  *Id*.  Here, Wooden's motion requested "to amend her original complaint for a Class Action."  R. 10, Page ID 144.  The district court dismissed Wooden's motion as futile because the motion "fail[ed] to allege any of the Rule 23(b) requirements to certify a class of plaintiffs."  R. 24.

Indeed, after meeting the prerequisites of Rule 23(a), a party seeking class certification must then demonstrate that the action falls within at least one of the specified categories of Rule 23(b).  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  Wooden's motion was futile because it failed to specify a 23(b) category.  *See Miller*, 408 F.3d at 817 (indicating that a motion to amend may be denied as futile "when the proposed amendment" would not "survive a motion to dismiss").

**II.      Alcoa's Decision to Terminate Wooden's Benefits**

Wooden argues that Alcoa's decision to terminate her benefits was arbitrary and capricious because: 1) Alcoa's conflict of interest influenced its decision, 2) Alcoa summarily dismissed medical evidence in support of her claim, and 3) Alcoa summarily dismissed the SSA's determination that she was totally disabled.  While Alcoa did fail to properly address Wooden's favorable SSA determination, this alone is insufficient to support the relief requested.

## A.     Standard of Review

We review *de novo* a district court's ruling in an ERISA case and apply the same legal standard as the district court. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). We also review a plan administrator's denial of ERISA benefits *de novo*. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). However, when an ERISA plan "vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary and capricious." *Id*. Because the Plan here provides that benefits will be paid only if the plan administrator decides in its discretion that the applicant is entitled to them, arbitrary and capricious review is warranted.[3]

The arbitrary and capricious standard is one of the least demanding forms of judicial review. *See McDonald v. W.S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)). So long as there is evidence in the record to support a reasonable explanation to deny benefits, the decision is not arbitrary and capricious. *Id*. "[W]e will uphold the administrator's decision if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks omitted). Deference notwithstanding, "our review is no mere formality." *Id*.

---

[3] Contrary to Wooden's assertion, whether Aetna, Alcoa's designated claims administrator, has discretionary authority under the Plan is not relevant to the standard of review we apply. Final appeals are decided by Alcoa (in the form of the BAC). Alcoa is the plan administrator. It is the plan administrator's decision we review. *Moon*, 405 F.3d at 378.

Our review calls for a totality of the circumstances type of analysis of the decision to deny benefits. We "take account of several different considerations" and any one factor's significance "depend[s] upon the tiebreaking factor's inherent or case-specific importance." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). One of the factors we consider is the conflict of interest that results when the plan administrator not only pays benefits to employees, but also determines who is eligible to receive benefits. *Glenn*, 461 F.3d at 666. Additionally, "we are required to review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id*. (internal quotation marks omitted). Finally, we are also entitled to "factor in the plan administrator's failure to give consideration to the Social Security Administration's determination that [a claimant] was totally disabled." *Id*. A review of these factors reveals that, although Alcoa failed to give due consideration to the SSA's disability determination, its overall decision to terminate benefits was not arbitrary and capricious.

**B.    Analysis**

*Conflict of Interest*

Wooden claims that Alcoa's conflict of interest improperly influenced its decision to terminate her benefits. While a conflict of interest does exist here, it does not weigh in favor of concluding that Alcoa's decision was arbitrary and capricious.[4]    "[T]he significance of [a conflict

---

[4] Contrary to Alcoa's assertions that there is no conflict of interest, one exists here because Alcoa funds LTD payments and determines eligibility for payments, even though the claims are administered through Aetna. *See Metro. Life Ins. Co.*, 554 U.S. at 114 ("An employer choosing an administrator in effect buys insurance for others and consequently . . . may be more interested in an insurance company with low rates than in one with accurate claims processing.").

of interest] will depend upon the circumstances of the particular case." *Metro. Life Ins. Co.*, 554 U.S. at 108.

Alcoa has taken steps to diminish the significance of its conflict of interest. Aetna's incentive to deny claims is minimized because it receives the same payment regardless of whether claims are approved or denied. Similarly, the employees who form the BAC, the internal entity that decides the final appeal, have no direct responsibility for Plan administration and receive no additional compensation. Alcoa's efforts do not weigh in favor of concluding that the decision was arbitrary and capricious. *See Met. Life Ins. Co.*, 554 U.S. at 117 (indicating that conflicts of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances").

*Medical Opinions*

Wooden claims that Alcoa summarily dismissed medical evidence supporting her claim. In weighing the evidence and opinions on both sides of the record, scant evidence favors a finding of disability.

After the reinstatement of her LTD benefits in April 2006, Wooden's in-person exams yielded conflicting results.[5] In June 2006, Dr. Thomas, one of Wooden's treating physicians, was confounded by her symptoms. By August 2006, "[n]eurologically, [he did not] find her very

---

[5] Wooden argues that Defendants improperly initiated the April 2007 review because she had already met the "any occupation" standard when her benefits were reinstated in April 2006. This argument fails because the Plan terms grant Alcoa a right of periodic examination to determine continued eligibility. Therefore, even if Wooden was reinstated at the "any occupation" standard, Alcoa was entitled to determine if Wooden continued to satisfy that standard.

impressive." The only evidence he had of her disability was "a subjective complaint of pain, pain, and more pain." Dr. Sokoloski, an orthopedic surgeon hired by Alcoa, found that Wooden exhibited "cogwheeling," indicating poor effort, and "Waddell signs," indicating that some of her reported pain had no physical source. Dr. Riethmiller was the only doctor to conclude that Wooden was disabled because of the sedation and drowsiness she reported as a side effect from her medication, making it difficult for her to concentrate.

In addition to the medical evidence from in-person examinations, the BAC had file reviews from four medical experts. All four concluded that the evidence in the record did not support Wooden's cognitive complaints and three took time to explain why they did not find Dr. Riethmiller's conclusion credible. Dr. Burnstein, a psychologist, and Dr. Cohan, a neurologist, both questioned Dr. Riethmiller's conclusions about Wooden's cognitive capabilities without any cognitive analysis. Dr. Goldberg, an anesthesiologist, questioned Dr. Riethmiller's finding that Wooden's cognitive problems were caused by her medication because she had been taking it for four years without any prior complaint.

In summary, when faced with conflicting evidence, the BAC chose to credit six medical opinions over that of Dr. Riethmiller. Two of the doctors had examined Wooden in person, and one was one of Wooden's treating physicians. This was not improper.[6] *See McDonald*, 347 F.3d at169

---

[6] Two other facts are noteworthy. First, Wooden received two time extensions to submit more medical evidence before the file reviews commenced. R. 36-5 Page ID 691-92; R. 37-1, Page ID 713, 724. Second, the denial letter from Aetna's appeal suggested that Wooden submit a neurological evaluation to support her claim should she choose to appeal to the BAC. R. 37-2, Page ID 759. There is no evidence that she submitted any additional evidence before her final review by the BAC. Wooden's "failure to fully explore and exercise her procedural rights does not undermine the fundamental fairness of an otherwise full and fair administrative review process." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010).

("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious. . . ."). Furthermore, the file reviewers did not ignore Dr. Reithmiller's analysis, but explained why his diagnosis was questionable. *See Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) ("Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions."). The Plan's decision to credit six medical opinions over that of one was supported by the record. Accordingly, the review of the medical evidence does not weigh in favor of concluding that the denial of benefits was arbitrary and capricious.

### The SSA's Determination of Total Disability

Finally, Wooden asserts that Alcoa failed to properly address the conflict between its finding that she was not totally disabled and the SSA's finding that she was. We agree and, therefore, this factor weighs in favor of finding that Alcoa's decision was arbitrary and capricious.

"[A]n ERISA plan administrator is not bound by an SSA disability determination" when reviewing a claim for benefits under an ERISA plan. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). Nevertheless, an "SSA determination, though certainly not binding, is far from meaningless." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005). It takes on special significance when a plan administrator seeks and embraces the SSA determination for its own benefit, only to ignore or discount it later. *See Glenn*, 461 F.3d at 667. In cases where the plan administrator:

> (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious.

*Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 554 (6th Cir. 2008) (citing *Glenn*, 461 F.3d at 669). Here, Alcoa does not simply encourage, but requires LTD applicants to apply for SS benefits. Alcoa benefits financially from this requirement because a participant's LTD benefits are reduced proportionally by the amount of disability income received from other sources. In accordance with *Bennett*, Alcoa should have explained its contrary determination. Alcoa failed to do so.

The initial denial letter from Aetna simply states that the favorable determination "did not support overturning the decision to terminate LTD benefits." The final denial letter from the BAC does not mention the SSA decision at all. A casual mention of a disability determination is insufficient to constitute an "explanation" in accordance with *Bennett*. *See Glenn*, 461 F.3d at 671 n.3 (rejecting administrator's claim that it "specifically discussed" a certain letter and reasoning that "the word 'discussed' [was] somewhat misleading; 'mentioned' would be a more accurate choice"); *Bennett*, 514 F.3d at 553 n.2 (holding that a claims administrator failed to explain why it reached a conclusion contrary to an SSA decision even though "[the claim administrator's] final determination letter d[id] mention the SSA's decision. . . . [M]ere mention of the decision is not the same as a discussion about why the administrator reached a different conclusion from the SSA."). For these reasons, this factor weighs in favor of finding Alcoa's decision was arbitrary and capricious.[7]

---

[7] Alcoa also argues that the denial is actually not inconsistent with the SSA determination because it applied different standards to determine whether Wooden was totally disabled. Alcoa, however, has failed to demonstrate how its definition of "total disability" differs from that of the SSA's. The SSA required Wooden's disability to prevent her

In conclusion, although failure to explain a contrary SSA determination in circumstances such as these is "obviously a significant factor," it "does not render the decision [to deny benefits] arbitrary *per se* . . . ." *Glenn*, 461 F.3d at 669. Alcoa's cavalier treatment of Wooden's SSA determination weighs in favor of finding Alcoa's denial of benefits to be arbitrary and capricious. The review of the medical evidence and the conflict of interest, however, do not. Accordingly, we cannot conclude that its decision to terminate Wooden's benefits was arbitrary and capricious. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) ("[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious.").

## III. Alleged Overpayment

The SPD stipulates that Plan benefits are reduced in proportion to any income received from Social Security once claimants successfully acquire SS benefits. Moreover, if SS benefits are paid retroactively, the Plan requires claimants to repay "any overpayment of disability benefits." Thus, when Wooden received SS benefits in February 2006 that were retroactive to January 2004, Alcoa sent a letter requesting that the overpayment which had resulted from the retroactive benefits be repaid to the Plan. Defendants sought repayment under 29 U.S.C. § 1132(a)(3), which grants an ERISA plan administrator equitable relief to enforce the terms of a plan. The district court granted

---

from "making an adjustment to any other work" after accounting for her "residual functional capacity" and her "vocational factors ([of] age, education, and work experience)." 120 C.F.R. § 404.1520(g). Meanwhile, to be totally disabled under Alcoa's "any occupation" standard required Wooden to prove that she "cannot perform each of the material duties of any gainful occupation for which [she is] reasonably suited by training, education, and experience."

summary judgment to Defendants on this claim. Wooden appeals the grant of summary judgment. For the following reasons, we agree with the district court's reasoning.

We review an order granting summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997). Summary judgment is proper if, after viewing the evidence that way, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); Fed. R. Civ. P. 56(a). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Section 502(a)(3) of ERISA permits a fiduciary to bring a civil action for equitable relief to redress violations of a plan's terms or to enforce the terms of a plan. 29 U.S.C. § 1132(a)(3). Whether relief is equitable "depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (internal citation and quotation marks omitted). Equitable relief seeks to "restore . . . particular funds or property in the [other party's] possession." *Id*. at 214. An insurance plan, therefore, must "specifically identif[y] a particular fund" that is "distinct from [the participant's] general assets" and must specify the portion of that fund to which the plan is entitled. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364 (2006).

Alcoa properly seeks equitable relief. The SPD plainly requires participants to "arrange to repay the company for any overpayment of disability benefits that results when [a claimant] receive[s] benefits from any other source." This includes overpayments resulting from the "receipt

of retroactive payment from any other source (such as the Social Security Administration)." Alcoa's claim is properly limited to a specified fund within Wooden's general assets—the proportion of income that would have been reduced if she had received her retroactive benefits earlier. *See Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270, 275 (6th Cir. 2010) (holding that a reimbursement clause was permissible because it was limited "to a specifically identifiable fund (the overpayments themselves) within [the participant's] general assets, with the Plan entitled to a particular share (all overpayments due to [the participant's] receipt of Social Security benefits, not to exceed the amount of benefits paid)").

Wooden argues for the first time on appeal that the overpayment provision is not actually a part of the Plan, but only the SPD. "This court will not decide issues or claims not litigated before the district court. . . . '[W]e review the case presented to the district court rather than a better case fashioned after the district court's order.'" *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) (quoting *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986)).[8]

## <u>CONCLUSION</u>

For the foregoing reasons, we **AFFIRM** the district court judgment in its entirety.

---

[8] Although our decision does not reach this argument, we note that the SPD states in fine print: "This booklet is the plan document and the summary plan description (SPD) of your long term disability benefits. . . . The terms under which the plan operates are contained in this booklet and in the policy and/or certificate from the insurance carrier." Additionally, the policy document incorporates the SPD by reference into its terms, stating "[a]n employee shall be eligible to participate in the Plan in accordance with the applicable SPD Rules." Logic has it that the two documents together make up the terms of the Plan. *See Eugene S. v. Horizon Blue Cross Blue Shield of NJ.*, 663 F.3d 1124, 1131 (10th Cir. 2011) (holding that so long as an SPD does not conflict with policy terms or contain terms not reflected in the policy, the burden is on the insurer to "demonstrate that the SPD is part of the Plan, for example, by the SPD clearly stating on its face that it is part of the Plan").