NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0022n.06

No. 21-5315

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| D.S.S., By and Through his Next Friend and Custodian, Quintina McDowell f/k/a/ Quintina Gore; JAVEY L. BROWN, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | **FILED** Jan 10, 2022 DEBORAH S. HUNT, Clerk |
| v. | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA; TIME WARNER CABLE, INC., | ) ) ) | OPINION |
| Defendants-Appellees. | ) ) ) | |

Before: SUHRHEINRICH, STRANCH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** In February 2020, D.S.S. and Javey Brown brought suit under the Employee Retirement Income Security Act (ERISA) and various state laws to claim the life insurance benefits of their mother, Jancita Malone, who passed away on March 18, 2014. The executor of Malone's estate contacted Prudential and Time Warner about the children's rights to life insurance benefits that Malone acquired through her employment. The executor learned that the benefits had already been paid to one of Malone's other relatives who Malone designated as sole primary beneficiary shortly before her death. Neither the executor nor the children initiated any formal action until the filing of this suit in 2020. The district court dismissed the claims, concluding that ERISA preempted the state law claims, and that the ERISA claim is time barred. For the following reasons, we **AFFIRM**.

## I.  BACKGROUND

### A.  Factual Background

As an employee of Time Warner, Jancita Malone participated in Time Warner's ERISA-governed employee benefits plan, which included life insurance benefits.  Malone was covered for a total of $147,000 in life insurance.  Prudential underwrote and acted as Claims Administrator of the program, having discretion to interpret and execute the plan.

The Plan requires that an employee "designate a beneficiary with the TWC Benefits Service Center" who will receive benefits if the employee dies "while your coverage is in effect." That designation can also be made "online at twcplusyou.com."  The Plan explains that the employee has "the right to choose a [b]eneficiary," and that an employee may change a named beneficiary at any time, without the consent of the present beneficiary, as long as the change is filed through the Contract Holder—here, Time Warner.

The Plan also provides a procedure for making claims for benefits:  once a claim is submitted, the claims administrator must issue a written decision within 45 days.  A claim that is not adjudicated within that time frame is deemed to be denied.  Upon denial, the claimant may file an appeal within 180 days, to which the claims administrator must respond within 45 days.  Again, if no response is provided, the claim is deemed denied.  Following the denial of the appeal, the claimant can either bring a second appeal through the administrative process or file suit.  The Plan provides that any court action must be "brought within one year of the final adverse benefit determination."

Prior to February 7, 2014, Malone designated her sons, Brown and D.S.S as primary beneficiaries, each with a 50% share.[1]  According to Prudential, on February 7, 2014, Malone changed the designation, making another relative, Tiffani Graves, the sole primary beneficiary. Malone named her two sons, Brown and D.S.S., as 50% contingent beneficiaries.

Malone died tragically on March 18, 2014.  A few days later, Graves filed a claim for the life insurance proceeds, which Prudential ultimately approved and paid by June 2014.

On December 15, 2014, Quintina McDowell, the executor of Malone's estate and guardian of D.S.S., contacted Prudential and Time Warner regarding Malone's life insurance benefits.  Time Warner responded with a letter containing information about the steps necessary to verify whether benefits were payable.  Over the course of several phone calls, Prudential advised McDowell that the claim had already been paid, that it could not tell her who the beneficiary was, but would send an IRS Form 712 upon request.  On December 31, 2014, Prudential sent her the Form 712, which showed that $147,000 in life insurance benefits had been paid to Graves as the designated primary beneficiary.

After receiving Form 712, McDowell initially continued to contact Prudential seeking additional information, including when the changes to the beneficiary designations had taken place, and was told to contact Time Warner.  On September 10, 2015, Time Warner advised McDowell that the change had occurred on February 7, 2014.  Prudential mailed McDowell a letter

---

[1] We note a factual dispute on appeal concerning whether D.S.S. was ever designated a primary beneficiary prior to February 7, 2014.  Prudential now contends that D.S.S. was never designated a primary beneficiary, citing screenshots of its internal program that were attached to its motion to dismiss. D.S.S. and Brown contest that and challenge the authenticity of the screenshots.  The district court, however, found that it was "undisputed that, as of February 6, 2014, D.S.S. and Brown were named as Malone's primary beneficiaries."  For the purposes of this appeal, we need not resolve this factual dispute and will proceed, assuming that D.S.S. was designated as a primary beneficiary prior to February 7.

on September 14 that provided the beneficiary designations from before and after the beneficiary change.

Two years later, Chris Meinhart was appointed Administrator of Malone's estate. In that capacity, he continued McDowell's efforts to obtain additional documentation regarding the beneficiary change.

### B.    Procedural History

On February 26, 2020, D.S.S. and Brown sued Prudential in Kentucky state court alleging breach of contract, breach of fiduciary duty, bad faith, and violations of the Kentucky Unfair Claims Settlement Practices Act (KUCSPA), in an effort to recover the $147,000 in life insurance benefits. Prudential removed the case to federal court on April 3, 2020, arguing complete preemption by ERISA and diversity jurisdiction. On June 4, D.S.S. and Brown filed an amended complaint in the district court, including a claim under ERISA and adding Time Warner as a defendant.

Prudential filed a motion to dismiss the complaint on June 22, 2020, and Time Warner moved to dismiss the amended claim on November 13. On November 23, the district court converted Prudential's motion to dismiss into a motion for summary judgment, based on the documents provided by the parties, and granted summary judgment. The court first found that any claims for breach of fiduciary duty under ERISA pursuant to § 502(a)(3) were abandoned. It then reasoned that D.S.S. and Brown's state law claims were preempted by ERISA because they do not seek to correct violations of legal duties that exist independent of ERISA. And because the claims are subject to complete preemption, ERISA's savings clause did not apply. Applying a one-year statute of limitations based on the Plan's contractual limitations provision, the district court reasoned that the statute of limitations had long lapsed and held that D.S.S. and Brown's ERISA

-4-

claim was time barred. It found that D.S.S. and Brown were put on notice of their injury when Prudential mailed McDowell the Form 712 in December 2014, which constituted a "clear repudiation of benefits" because it revealed that Graves was the only beneficiary, and that the benefits had already been paid to Graves. At that point, the cause of action had accrued and the limitations period began. The court found that D.S.S. and Brown failed to file a written claim for benefits or a lawsuit until February 2020, long after the contractual limitations period had lapsed.

On March 19, 2021, the district court also converted Time Warner's motion to dismiss into a motion for summary judgment and granted summary judgment for Time Warner. The court again held that the state claims were preempted by ERISA and that the ERISA claim was time-barred by the one-year contractual limitations period.

D.S.S. and Brown now timely appeal.

## II.   DISCUSSION

On appeal, D.S.S. and Brown do not contest the district court's conclusions that their state law claims are preempted, that the proper limitations period to file suit is one year, or that any claim for breach of fiduciary duty under § 502(a)(3) is abandoned. So we need not address these conclusions in this case. Rather, D.S.S. and Brown contest only when the cause of action accrued, whether the limitations period expired, and whether it was tolled. They contend that the court erred because: (1) Prudential and Time Warner were required to employ the administrative process pursuant to the Plan, and by failing to do so, the cause of action did not accrue and the one-year limitations period did not begin to run; (2) repudiation does not apply because they did not exhaust their administrative remedies; (3) assuming repudiation does apply, the district court erred in determining that Form 712 constituted knowledge of injury that commenced the limitations period; and finally, (4) the ERISA cause of action was tolled under state law.

"We review de novo a district court's grant of summary judgment." *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (citing *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016)).

D.S.S. and Brown argue that the applicable Summary Plan Description (SPD) provides that Prudential and Time Warner are required to complete the administrative process, and because the companies did not, D.S.S. and Brown never received a final adverse benefit determination. D.S.S. and Brown also contend that because they never received a final adverse determination, their cause of action did not accrue and so their claims were not untimely.

The parties do not dispute that both the SPD and the terms of the Plan are relevant to discerning the appropriate accrual date under the Plan's terms. Indeed, because the SPD is incorporated by reference into the Plan document, the SPD terms are Plan terms as well. *See Wooden v. Alcoa, Inc.*, 511 F. App'x 477, 486 n.8 (6th Cir. 2013).

Our precedent is clear that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Weiner v. Klais & Co.*, 108 F.3d 86, 90 (6th Cir. 1997) (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)), *abrogated on other grounds by Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). But because they never initiated a claim, D.S.S. and Brown failed to exhaust their administrative remedies prior to filing suit in federal court. The evidence in the record and the allegations of the complaint show that they only sought information from Prudential and Time Warner, but never formally contested—or attempted to contest—the payment of the benefits to Graves until suit was filed. Even if we assume that the failure to receive a final adverse determination would preclude this ERISA claim from accruing, because D.S.S. and Brown still have not attempted to file or exhaust a claim under the Plan's procedures, their cause of action has not accrued, and they cannot satisfy the requirements to commence this lawsuit. Thus, D.S.S. and Brown's failure to exhaust

administrative remedies alone suffices to show that the district court properly granted summary judgment.

Even accepting D.S.S. and Brown's argument that they could bring this suit despite their failure to exhaust administrative remedies, their claim still fails. Prudential contends in response to this argument that it "would mean that a claimant could insulate herself from the Plan's limitations provisions simply by never filing a claim, even if she knew that the Claims Administrator had determined that she had no right to benefits." The "clear repudiation" rule, however, addresses that circumstance.

The accrual of a cause of action under ERISA is addressed by the "clear repudiation" rule, which "provides that when a fiduciary gives a claimant clear and unequivocal repudiation of benefits that alone is adequate to commence accrual, regardless of whether the repudiation is formal or not." *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 302 (6th Cir. 2006) (citing *Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998)). This rule therefore operates in concert with any administrative exhaustion requirements. *See, e.g.*, *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 948–49 (8th Cir. 2002) ("When an ERISA claim is governed by a state statute of limitations, the cause of action accrues, for limitations purposes, when the plan administrator formally denies the claim for benefits, unless there was a 'repudiation by the fiduciary which is clear and made known to the beneficiary.'") (quoting *Bennett*, 141 F.3d at 839); *Morrison*, 439 F.3d at 302–03 (citing *Wilkins*).

In *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*, a widow sued challenging the failure of her deceased husband's pension plan to advise her of the consequences of consenting to her husband's election of a single life rather than a joint life annuity when he retired. 547 F.3d 531, 533 (6th Cir. 2008). Six years later, she submitted a claim, which was

denied as untimely. *Id.* at 533–34. Applying *Morrison*, we reasoned that the pension plan's "cessation of payments" upon the husband's death constituted a repudiation that was "clear and unequivocal." *Id.* at 539. We also rejected the widow's argument that her claim did not accrue until she made a formal request for benefits that was denied, *i.e.*, that she had to follow the administrative procedure. *Id.* at 539–40.

Here, on December 15, 2014, Prudential informed McDowell that Malone's life insurance proceeds had already been paid on June 14, 2014. When she received the Form 712 from Prudential, McDowell learned that those benefits had been paid to Graves, not D.S.S. or Brown. That confirmation, like the failure to pay benefits in *Redmon*, constitutes a clear and unequivocal repudiation of benefits. The document showed that Prudential thought Graves, not D.S.S. or Brown, was the designated beneficiary entitled to the benefits, and had therefore already paid the benefits to Graves.

D.S.S. and Brown contend that the Form 712 did not place them "on notice of injury thus commencing the limitations period." They argue that it only "informs that the benefit was paid to another. It does not address, nor was it intended to address, the underlying issue of the Children's entitlement to benefits under the Plan and does nothing to put them on notice of [an] injury." This assertion fails to grapple with the relevant authority. As in *Redmon* and *Morrison*, the clear repudiation rule turns on whether the action alerted D.S.S. and Brown that they were not entitled to the benefits. *See Morrison*, 439 F.3d at 302; *Redmon*, 547 F.3d at 539. Just like the cessation of payments in *Morrison*, the Form 712 that McDowell received on December 31, 2014, which showed that Graves had already been paid the benefits, put D.S.S. and Brown on notice that they were not entitled to the benefits. At that point, the cause of action accrued under the clear repudiation rule, and the limitations period began to run. Thus, the district court did not err in

determining that the cause of action accrued on December 31, 2014, and that the limitations period ran one year after that date.

D.S.S. and Brown's reliance on *Moyer v. Metropolitan Life Insurance Co.*, 762 F.3d 503 (6th Cir. 2014), to suggest that the limitations period is tolled because they received no written notice of the one-year period is misplaced. In *Moyer*, the claimant actually initiated a claim pursuant to the administrative process set forth in the Plan. *Id.* at 504. When the Plan Administrator denied benefits pursuant to the administrative process, it had the obligations delineated in *Moyer*, including to provide an adverse benefit determination letter with notice of the right to bring suit under ERISA and the time frame for doing so. *Id.* at 505–06. D.S.S. and Brown never initiated any claim process, and therefore, they never received an adverse benefit determination letter. Accordingly, *Moyer* is inapposite.

Finally, D.S.S. and Brown contend that the statute of limitations period was tolled by KRS § 413.170. That statute provides that a person under the age of majority when a specified cause of action accrued (those mentioned in KRS §§ 413.090–413.160) may bring that action "within the same number of years" as the original limitations period after the person reaches the age of majority. Prudential and Time Warner contend that D.S.S. and Brown waived this argument by not raising it properly before the district court, or in the alternative, that it does not apply to sustain their position.

We need not reach the merits of this argument because, even assuming that KRS § 413.170 could apply to toll the Plan's one-year statute of limitations, the limitations period would still have already lapsed as to Brown—the only son with a viable claim. Brown concedes that he reached the "age of majority" in 2016. Because we have determined that Brown's cause of action accrued under the repudiation rule, the claim lapsed one year later in 2017—nearly three years before the

underlying action had been commenced. Accordingly, reliance on KRS § 413.170 does not save the claims of D.S.S. and Brown.

## III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.