[Cite as *Clayman v. Zurich Am. Ins. Co.*, 2013-Ohio-3866.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| ADELBERT CLAYMAN, et al., | : | **O P I N I O N** |
| Appellants, | : | |
| - vs - | : | **CASE NO. 2012-P-0126** |
| ZURICH AMERICAN INSURANCE COMPANY, | : | |
| | : | |
| Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas.
Case No. 2008 CV 01899.

Judgment: Reversed and remanded.

*David W. Hilkert*, 3475 Ridgewood Road, Akron, OH 44333 (For Appellants).

*Tiffany C. Miller*, Bailey Cavalieri, LLC, 10 W. Broad Street, 21st Floor, Columbus, OH 43215 (For Appellee).

TIMOTHY P. CANNON, P.J.,

{¶1} Appellants, Adelbert Clayman and Barbara Skarupa, appeal the decision of the Portage County Court of Common Pleas granting judgment on the administrative record in favor of appellee, Zurich American Insurance Company ("Zurich"). At issue is the denial of coverage benefits under a group accident policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). We conclude the trial court erred in granting Zurich's motion for judgment on the administrative record,

because Zurich, as the plan administrator, acted in an arbitrary and capricious manner by its selective, self-serving investigation. This includes its inexplicable failure to obtain complete and necessary information—including its failure to make any attempt to reconcile what is obviously a critical discrepancy in the college's characterization of decedent, Margaret Clayman's, enrollment status. Rather, Zurich accepted the version of Ms. Clayman's status most beneficial viewed in light of the plan's provisions. As explained herein, the decision is reversed and remanded.

{¶2} On November 25, 2008, Adelbert Clayman and Barbara Skarupa filed a complaint against Zurich alleging, inter alia, wrongful denial of life insurance benefits. The complaint set forth that Clayman and Skarupa were beneficiaries under Zurich group accident policy no. GTU 2907376, issued to Clayman's employer, National City Corporation. The policy included dependent coverage for children "more than 19 years of age but less than 23 years of age and enrolled on a full-time basis in a college, university, or trade school." On April 21, 2007, Clayman and Skarupa's daughter, Margaret Clayman (age 20), died as the result of an automobile accident.

{¶3} The National City group accident policy is governed by ERISA. Clayman and Skarupa submitted their claim to Zurich as the plan administrator.

{¶4} In a letter dated April 23, 2008, Zurich denied the claim filed regarding Margaret Clayman, concluding "that Margaret Clayman was not a 'Covered Child' under the Policy because, at the time of death, she was more than 19 years old *and not enrolled as a full time student*." (Emphasis added.)

{¶5} On September 17, 2010, Zurich filed a motion for judgment on the administrative record. Also on September 17, 2010, Clayman and Skarupa filed a

2

motion for summary judgment, based on the administrative record, but also supported by the deposition of Sonya Hartburg, Campus Director for Bohecker College, and the depositions of Zurich employees, Patricia Lane and Janet Warley.

{¶6} On February 15, 2012, the trial court issued a magistrate decision, concluding the "benefit determination must be upheld because it is rational in light of the plan's provisions. There was substantial evidence including the Bohecker College letters of November 1, 2007, and January 2, 2008, to support the administrator['s] determination. Zurich has discretionary authority to determine eligibility for benefits."

{¶7} On February 28, 2012, Clayman and Skarupa filed Civ.R. 53 objections.

{¶8} On September 4, 2012, the trial court issued a journal entry and order/adoption of magistrate decision, overruling Clayman and Skarupa's objections and granting Zurich judgment on the administrative record.

{¶9} On October 2, 2012, appellants filed their notice of appeal. On appeal, they raise four assignments of error. Appellants' first and second assignments of error state:

{¶10} [1.] The Trial Court committed prejudicial error in granting Defendant-Appellee Zurich's Motion for Judgment on the administrative record based upon its opinion that substantial evidence supported Zurich's determination that Margaret Clayman was not a covered dependent.

{¶11} [2.] The Trial Court committed prejudicial error when it found no due process violation and denied Plaintiffs/Appellants' Request to supplement the Administrative Record with the deposition transcript

3

of Sonya Hartburg of Bohecker College and the transcripts of Zurich's claim adjusters.

{¶12} In their first assignment of error, appellants argue the trial court abused its discretion when it found substantial and/or reliable evidence to uphold the determination that Margaret Clayman was "not enrolled on a full-time basis in a college" at the time of her death. In their second assignment of error, appellants argue the trial court erred in finding no due process violation in the determination of their claim and, thus, in denying their request to supplement the administrative record with the depositions of Zurich and Bohecker College employees.

{¶13} At the outset, we note the accident policy in the case sub judice is governed by ERISA, which is contained in 29 U.S.C. 1000 et seq. 29 U.S.C. 1132(a)(1)(B) states a civil action may be brought "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. 1132(e)(1) confers jurisdiction:

{¶14} *Except for actions under subsection (a)(1)(B) of this section*, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in 29 USCS § 1021(f)*(1). State courts of competent jurisdiction* and district courts of the United States shall have concurrent jurisdiction of actions under *paragraphs (1)(B) and (7) of subsection (a) of this section.* (Emphasis added.)

4

{¶15} Thus, a claim to recover benefits under 29 U.S.C. 1132(a)(1)(B), as is the case here, was properly brought in the Portage County Court of Common Pleas.

{¶16} Before we evaluate the merits of this contention, we first address Zurich's argument that Clayman and Skarupa failed to properly preserve issues for review by not "stat[ing] with particularity all grounds for objection" to the magistrate decision and by not supporting their objections "by a transcript of all the evidence submitted to the magistrate," as required by Civ.R. 53(D)(3)(b)(ii) and (iii). Our review of Clayman and Skarupa's objections reveals that they identified the issues in the magistrate decision with sufficient particularity to preserve them for appeal. Moreover, because the judgment was rendered based on the administrative record, and that record is available for our review, a transcript of the proceedings is unnecessary.

{¶17} When a plan gives the administrator discretionary authority—which in this case it does—we review a denial of benefits to determine whether the plan administrator acted arbitrarily or capriciously, applying the same deferential standard of review as the lower court. *See Huffaker v. Metro. Life Ins. Co.*, 271 Fed.Appx. 493 (6th Cir.2008); *Penn v. Howe-Baker Engineers, Inc.*, 898 F.2d 1096, 1100 (5th Cir.1990), fn. 2A. However, in applying this standard, it is necessary to keep in mind the conflict of interest that Zurich has in reviewing its own denial of benefits. Most courts have held that "application of the standard should be shaped by the circumstances of the inherent conflict of interest." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984, citing *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1563. An administrator's decision will be upheld when it "'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence[.]'" *Elliott v. Metro. Life Ins. Co.*,

5

473 F.3d 613, 617 (6th Cir.2006), quoting *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir.2006).

**{¶18}** "[A] decision based upon a selective review of the record or an incomplete record is arbitrary and capricious." *Zenadocchio v. BAE Sys. Unfunded Welfare Benefit Plan*, S.D.Ohio No. 3:12-cv-99, 2013 U.S. Dist. LEXIS 45749, *38 (Mar. 29, 2013), citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir.2005); *see also Huffman v. Am. Elec. Power Serv. Corp.*, N.D.Ohio No. 3:06CV1305, 2007 U.S. Dist. LEXIS 75524 (Sept. 28, 2007) (holding that denial of coverage based on a selective review is arbitrary and capricious). Further, "the administrator can abuse his discretion if he fails to obtain the necessary information." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1015 (5th Cir.1992).

**{¶19}** For instance, in *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258 (6th Cir.2007), the Sixth Circuit Court of Appeals concluded that an administrator acted in an arbitrary and capricious manner "by ignoring substantial contrary evidence in Conger's medical records" in reaching a decision denying coverage. *Id.* at 265. The court reaffirmed the principle that "an administrator abuses its discretion when it refuses to consider additional evidence presented in an insured's appeal of a coverage denial, * * * or when it engages in a 'selective review of the administrative record' to justify a decision to terminate coverage." *Id.*, quoting *Moon*, *supra*, at 381. In finding the administrator's actions were arbitrary and capricious, the court pointed out that the administrator "focused on slivers of information that *could be* read to support a denial of coverage and ignored—without explanation—a wealth of evidence that directly contradicted its basis for denying coverage. Such a decision-making process is not

6

deliberate or principled, and the explanation provided was far from reasoned, as it failed to address any of the contrary evidence." *Id.* (Emphasis sic.)

{¶20} Similarly here, Zurich had before it two documents from the college which contained contradictory conclusions concerning Ms. Clayman's enrollment status. One conclusion was beneficial to Zurich, and one was not. The first is a November 1, 2007 letter from Registrar employee Melissa Cower, which provides in relevant part:

{¶21} This letter is to state that Peggy Clayman was enrolled at Bohecker College from 8/5/2006 to March 9, 2007 as a full time student. On February 13, 2007, Peggy came into my office to arrange to take a quarter off. When students do this, it is considered to be withdrawing from school. Unfortunately, Peggy was not enrolled at Bohecker at the time of her death. * * *

{¶22} Next, there is a January 2, 2008 letter from Bohecker College Campus Director Sonya Hartburg, which states:

{¶23} The purpose of this letter is to confirm the enrollment status of Margaret Clayman. Ms. Clayman enrolled in the Business Associate Degree program and started classes on August 5, 2006. Bohecker College is a year around school and Ms. Clayman chose to take a break for one academic term beginning on March 8, 2007. The following academic term began on May 24, 2007 which Ms. Clayman was planning to attend and complete her program of study. Her graduation date would have been March 15, 2008. Please disregard the first letter you received as it was in error. It

7

had been submitted in my absence by my registrar who did not have all the necessary information.

**{¶24}** Both letters are signed, appear on Bohecker College letterhead, and above all, *set forth opposite conclusions concerning the enrollment status of Ms. Clayman.* Obviously, the letters cannot both be correct, and further investigation seems not only warranted, but necessary. Indeed, a facial reading of Ms. Hartburg's letter suggests the previous Registrar employee's letter was written without all the necessary information and sent in error.

**{¶25}** The administrative record indicates, however, that the independent investigator from CS Claims only interviewed and investigated the Registrar employee responsible for the content in the first letter, i.e., the document beneficial to Zurich. Investigator Paulette Kolcz, of CS Claims, prepared the following report regarding her "investigation":

**{¶26}** I spoke to Melissa Cower at Bohecker College and she informed us that she had just spoken to the family attorney and was advised not to release any information regarding Margaret to anyone. She was able to tell us that once you withdraw from school, you are required to re-enroll for the next term. Also, the only enroll status designations that they have is [sic]: enrolled status- accepted to school and planning to enroll[;] active student- currently attending school[;] drop student- no longer attending school. I will close the case unless I hear otherwise.

8

{¶27} Ms. Kolcz's February 29, 2008 report to Zurich reflects the same. The report indicates the assignment was "to obtain additional information from Bohecker College regarding the insured and her enrollment status." The report then explains that CS Claims contacted Melissa Cower, who was able to answer general questions concerning Ms. Clayman's enrollment. The report states Ms. Cower "indicated that the insured would have been required to re-enroll at the college for the academic term beginning May 24, 2007, as she had withdrawn from the college prior to this term." The report also detailed the enroll status designations that were provided to Ms. Kolcz by Melissa Cower before concluding: "We forwarded the above information to your office, and as we have not received any further instructions from you, we have concluded our handling at this time. * * *"

{¶28} On January 21, 2008—months before the independent investigation concluded—Attorney Theresa Farwell sent Zurich a letter pointing out the discrepancy between the letters, noting that "the Director of Bohecker College clearly states, in writing, that the letter you somehow previously obtained was in error as to Margaret's enrollment status. * * * [A]s stated in the correspondence from the Director, the Registrar had neither authority nor the correct information regarding Margaret's enrollment status."

{¶29} Despite this letter, Zurich inexplicably did not send Ms. Kolcz further instruction concerning an investigation into Director Sonya Hartburg's letter, even though a review of Ms. Kolcz's report concerning enrollment indicates she only spoke to Melissa Cower. As observed by the Sixth Circuit Court of Appeals after finding an administrator acted arbitrarily and capricious by "cherry-picking" parts of a file: "Why

9

Met Life did not also send Dr. Rice's report or the rest of Spangler's file to Crawford for review by the vocational consultant is inexplicable." *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356 (6th Cir.2002); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence").

{¶30} This is a case of selective investigation marked by Zurich's intentional failure to obtain the complete and necessary information, to avoid contrary evidence, and to initiate further investigation only into beneficial correspondence. Its failure to follow up on the Hartburg letter appears to be deliberate. Zurich accepted Ms. Kolcz's investigation as adequate to support its pre-determined conclusion that Ms. Clayman was not enrolled at the college, even though it had been informed that the underlying support for this conclusion was incorrect and given by someone without authority.

{¶31} Further, Zurich failed to offer an explanation as to why it did not consider the contradictory statement from Ms. Hartburg. Even the most cursory investigations should have started with Ms. Hartburg to obtain the correct answer from someone with knowledge and authority. Her title indicates she operates in a supervisory capacity at the college. Also, Ms. Hartburg indicated she actually spoke with Ms. Clayman and knew of her intentions. There is no indication in the record that the investigator even *attempted* to communicate with Ms. Hartburg.

{¶32} We are mindful of Zurich's argument that further investigation would not make any difference because "both letters said the same thing—that Ms. Clayman had chosen to take a break from her college courses." We also acknowledge the body of case law cited by Zurich requiring a student to attend classes to be considered a full-

10

time student. However, this concept of "taking a break" must be taken into account with the plan's provision requiring "enrollment on a full-time basis." It is disingenuous to suggest the conclusion concerning Ms. Clayman's enrollment status has been made when further investigation into this status is warranted. Again, the problem is Zurich tailored its investigation specifically to meet the conclusion that Ms. Clayman was not enrolled at the college full-time for purposes of its policy. It may very well be that Zurich will reach the same conclusion; but we must conclude, as it stands now, that Zurich's conduct was arbitrary and capricious given its blatant investigative deficiencies.

{¶33} Although this selective, self-serving investigation, by itself, denotes arbitrary and capricious conduct, Zurich's conflict of interest further supports this court's conclusion. As noted above, the investigation was "shaped by the circumstances of the inherent conflict of interest"; *see also Hogan-Cross v. Metro. Life Ins. Co.*, 568 F.Supp.2d 410, 415 (S.D.NY 2008) ("The ultimate question in these cases is whether the decision in question was arbitrary and capricious. In making that determination, the existence, nature, extent, and effect of any conflict of interest are relevant considerations."). Indeed, "[a] situation in which the party paying the benefits also decides whether to pay involves 'an actual, readily apparent conflict.'" *Conger*, *supra*, 266, quoting *Killian v. Healthsource Provident Admrs., Inc.*, 152 F.3d 514, 521 (6th Cir.1998). We therefore conclude the trial court erred in granting Zurich's motion for judgment on the administrative record.

{¶34} Due to the lack of meaningful, independent investigation and review, we also hold that the trial court should have allowed for supplementation of the administrative record to permit a proper and effective review of the coverage

11

determination. At its core, due process requires a full and fair review which, in turn, "includes knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence by both parties before reaching and rendering his decision." *Anderson v. Sotheby's Inc.*, S.D.NY No. 04 Civ. 8180, 2006 U.S. Dist. LEXIS 42539, *18 (June 21, 2006). This conclusion is largely inconsequential given that Zurich will first have to conduct a full and fair investigation in accordance with the remand instructions of this court outlined in full below.

**{¶35}** Appellants' first and second assignments of error have merit.

**{¶36}** Appellant's third assignment of error states:

**{¶37}** "[3.] The Trial Court erred in denying Plaintiffs-Appellants' motion for default judgment and granting Defendant's motion for judgment on the administrative record."

**{¶38}** In their third assignment of error, appellants argue the trial court erred by granting Zurich leave to file its answer, applying a prejudice standard rather than an excusable neglect standard. In support, appellants cite *Miller v. Lint*, 62 Ohio St.2d 209 (1980). To a certain extent, this assignment of error is rendered moot by the foregoing analysis. Nonetheless, we note appellants did not challenge the subject order by filing a motion to set aside the magistrate's order, as provided for in Civ.R. 53(D)(2)(b). In the absence of a motion to set aside or a record, the decision to grant Zurich leave to file its answer instanter has not been preserved for appeal. *Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, ¶119.

**{¶39}** The third assignment of error is without merit.

12

{¶40} Appellants' fourth assignment of error states:

{¶41} "[4.] The Trial Court erred in granting final judgment to Zurich on the administrative record because Plaintiffs-Appellants had a viable fiduciary count not subject to resolution based upon the administrative record."

{¶42} In their fourth and final assignment of error, appellants argue the trial court erred in granting final judgment to Zurich because they had an independent fiduciary claim. Clayman and Skarupa's argument sets forth a "fiduciary" claim based on 29 U.S.C. 1132. Clayman and Skarupa allege Zurich should be estopped from denying coverage "based upon Zurich's acceptance of the application and premium for dependent coverage for Margaret Clayman." This argument, to a certain extent, is resolved by our disposition of the first two assignments of error.

{¶43} We note that in its motion for judgment on the administrative record, Zurich prayed that the court "dismiss this action with prejudice." The trial court granted the motion, thereby rendering judgment on all claims, which would include this "fiduciary" or "estoppel" claim. Because we reverse the trial court's judgment granting the motion for judgment on the administrative record, any order purporting to grant judgment with respect to this "fiduciary" claim is also vacated. This claim does not appear to have been addressed by either party in their respective dispositive motions.

{¶44} To the extent indicated, the fourth assignment of error is with merit.

{¶45} The issue of how the trial court should proceed on remand has not been addressed by the parties, though a review of federal cases that have been reversed and remanded for similar reasons is instructive. For instance, in *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654 (6th Cir.2004), the Sixth Circuit reversed the district court's order

13

granting MetLife's motion for judgment on the administrative record. The circuit court remanded the case to the district court with instructions to remand the claim to MetLife for reconsideration in light of the opinion. More recently, in *McCandless v. Std. Ins. Co.*, 509 Fed.Appx. 443 (6th Cir.2012), the Sixth Circuit reversed and remanded a similar case to the district court "with instructions to remand to the plan administrator for a full and fair review" of the claim, which "presumably [would] include" additional material the administrator previously neglected to evaluate. *Id.* at 449.

{¶46} We agree the most appropriate disposition is for the trial court to stay the proceedings below and order Zurich to conduct an objectively impartial investigation. The goal is to determine what the truth is, not what is best for either of the parties. It is clear that an investigation with that goal has yet to be done, and at this juncture, judgment on the administrative record is not appropriate for either party.

{¶47} For the foregoing reasons, the journal entry and order of the Portage County Court of Common Pleas, granting judgment in favor of Zurich on the administrative record, is reversed and remanded for proceedings consistent with this opinion.


COLLEEN MARY O'TOOLE, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.


_____


14

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶48} I respectfully dissent. As recognized by the majority, a plan administrator's decision should be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991).

{¶49} In the present case, the plan administrator's decision was the result of deliberate, principled reasoning and supported by substantial evidence.

{¶50} To be covered under the Zurich policy, Margaret Clayman had to be "enrolled on a full-time basis in a college" at the time of her death. At that time, Margaret Clayman was not enrolled in any college classes, having decided "to take a quarter off" according to Bohecker College Registrar, Melissa Cower, or "to take a break for one academic term" according to Bohecker College Campus Director, Sonya Hartburg. Based on the undisputed fact that Margaret Clayman was not enrolled in any classes, Zurich denied coverage for the deliberate and principled reason that Margaret Clayman was not "enrolled on a full-time basis in a college."

{¶51} The propriety of this conclusion has been affirmed and approved by a "significant body of case law requiring a student to attend classes to be considered a full-time student." *Fuller v. Natl. Union Fire Ins. Co. of Pittsburgh*, E.D.Ky. No. 07-138-ART, 2008 U.S. Dist. LEXIS 41994, *22 (May 27, 2008); *see Margie Bridals, Inc. v. Mut. Benefit Life Ins. Co.*, 379 N.E.2d 62, 65 (Ill.App.1978) (a "withdrawal from classes and leave of absence from the university cannot be considered in keeping with the activities of a 'full-time student'"); *accord Miller v. Universal Bearings, Inc. Emp. Beneficiary Assn. Plan*, 876 F.Supp. 1038, 1043 (N.D.Ind.1995); *Imerson v. Dist. School Bd. of Pasco*

15

*Cty.*, 818 F.Supp. 1500, 1503 (M.D.Fla.1993); *Prudential Ins. Co. of Am., Inc. v. Superior Court of Santa Cruz Cty.*, 98 Cal.App.4th 585, 600, 119 Cal.Rptr.2d 823 (2002) ("[n]umerous decisions agree with the ruling in *Margie Bridals* that the ordinary, unambiguous meaning of the phrase 'full-time student' in a group health policy is attendance at classes on a substantial basis") (cases cited); *compare Bancale v. RCA Serv. Co.*, 2nd Dist. No. 10051, 1987 Ohio App. LEXIS 5764, *9 (Feb. 3, 1987) ("the intent to reenroll at some future date does not satisfy the policy's requirement that a student be in full-time attendance on the date of injury").

{¶52} Given the fact of Margaret Clayman's voluntary withdrawal from classes and the above-cited case law, Zurich's denial of Adelbert Clayman's and Barbara Skarupa's claims was neither arbitrary nor capricious.

{¶53} The majority concedes that the record as is supports Zurich's denial of benefits, but chides Zurich for conducting a "selective, self-serving investigation" into Margaret Clayman's enrollment status. *Supra* at ¶ 31-32. Understandably, the majority is somewhat vague about the point of such further investigation. Margaret Clayman had voluntarily withdrawn from classes and was not currently enrolled at the time of her death. Further investigation cannot alter those facts. Her enrollment status vis-à-vis the Bohecker College administration is irrelevant. Regardless of whether Bohecker College considered her enrolled or "taking a break," the Zurich policy required enrollment "on a full-time basis." Not being enrolled in any classes is inconsistent with being enrolled "on a full-time basis."

{¶54} Contrary to the majority's characterization, this is not "a case of selective investigation marked by Zurich's intentional failure to obtain the complete and

necessary information, to avoid contrary evidence, and to initiate further investigation only into beneficial correspondence." *Supra* at ¶ 29. Such a statement is unfair and misleading.

**{¶55}** Zurich retained an independent investigating firm, CS Claims, to conduct its investigation. When the Zurich review committee requested additional information about the claim, CS Claims contacted Bohecker College, which, ***on the advice of counsel for Adelbert Clayman and Barbara Skarupa***, refused to divulge any information about Margaret Clayman, other than to confirm that she had withdrawn from school. This is hardly an intentional failure on Zurich's part to obtain the necessary information.

**{¶56}** Even more telling, Zurich advised Clayman and Skarupa that, during the administrative review process, they had the right "to submit written comments, documents, or other information in support of your appeal," that their appeal "should include supplemental documentation that will have a bearing on our decision," specifically "evidence that Ms. Clayman satisfied the definition of a 'covered child' within the meaning of the policy." In other words, Clayman and Skarupa had the opportunity to selectively "cherry-pick" whatever information they thought supported their claim and submit it to Zurich's review committee. Assuming, arguendo, that the claims investigation was incomplete, Clayman and Skarupa had the right, opportunity, and incentive to supplement the record themselves. *Balmert v. Reliance Std. Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir.2010) ("[a] claimant's failure to fully explore and exercise her procedural rights does not undermine the fundamental fairness of an otherwise full and fair administrative review process").

{¶57} Far from intentionally failing to obtain a complete record, Zurich's efforts to supplement the record were foreclosed by counsel's advice to Bohecker College not to provide information regarding Margaret Clayman. Despite having the opportunity to provide such information on their own, Clayman and Skarupa failed to take advantage of the opportunity.

{¶58} The majority relies upon the case of *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir.2007), for the proposition that "an administrator abuses its discretion when it refuses to consider additional evidence presented in an insured's appeal of a coverage denial," and instead "focuse[s] on slivers of information that *could be* read to support a denial of coverage and ignored-without explanation-a wealth of evidence that directly contradicted its basis for denying coverage." (Emphasis sic.)

{¶59} The record before us demonstrates that Zurich did not refuse to consider additional evidence - Clayman and Skarupa offered no additional evidence and hindered Zurich's attempt to obtain such evidence. Likewise, the record before us demonstrates that Zurich's denial of the claim did not rely on ambiguous "slivers of information," but on the principled, reasoned, and well-established proposition that a student must attend classes to be considered a full-time student.

{¶60} The judgment of the trial court should be affirmed. I respectfully dissent.